IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BRETT STRANGE,

    Plaintiff,

v.

MEGAN J. BRENNAN,
Postmaster General, United States
Postal Service,

    Defendant.

Case No. 3:15-cv-377

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART MOTION FOR SUMMARY JUDGMENT OF DEFENDANT MEGAN J. BRENNAN, POSTMASTER GENERAL, UNITED STATES POSTAL SERVICE (DOC. #21) AND OVERRULING MOTION FOR SUMMARY JUDGMENT OF PLAINTIFF BRETT STRANGE (DOC. #17); PLAINITFF'S CLAIMS TWO, THREE AND FIVE AGAINST DEFENDANT ARE DISMISSED WITH PREJUDICE; PLAINTIFF'S CLAIM FOUR SHALL PROCEED ONLY AS AN ALLEGED DISCRETE ACT OF DISCRIMINATION; JUDGMENT SHALL ULTIMATELY ENTER IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFF ON CLAIMS TWO, THREE AND FIVE

---

Plaintiff Brett Strange ("Plaintiff") alleges that he was subjected to race-based discrimination and a hostile work environment between June, 2012, and March, 2013, while he was employed by the United States Postal Service ("USPS"). He claims that this discrimination and hostile work environment were effected by employees of Megan J. Brennan, Postmaster General of the United States ("Defendant"). Plaintiff claims that Defendant's actions violated his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Defendant argues that all of Plaintiff's claims are barred by the statute of limitations. Before the Court are Plaintiff and Defendant's

cross-motions for summary judgment on the statute of limitations issue. Doc. #17, 21. For the reasons set forth below, Defendant's motion is SUSTAINED IN PART AND OVERRULED IN PART, and Plaintiff's motion is OVRRULED in its entirety.

I.     **RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff is an African-American male who had worked for the USPS since 1986, and had been a manager within the USPS since 1995. Doc. #17, PAGEID #286. In 2008, he began serving as the Manager of the USPS Dayton View Branch of the Dayton Post Office. Doc. #21-1, PAGEID #582. In 2012, an Andrew Glancy ("Glancy") began supervising Plaintiff, first as Acting Manager of Customer Services Operations, and then as the Officer in Charge ("OIC") for the Dayton, Ohio, area. Doc. #21-6, ¶ 2, PAGEID #673, 676. Plaintiff claims that Glancy demonstrated a dislike for him, and undertook actions that impeded his ability to competently perform his tasks as Manager of the Dayton View Branch, Doc. #17, PAGEID #286, until Glancy allegedly relieved him of his duties as Manager in July, 2016. *See* Doc. #14, PAGEID #114-15.[1]

A.     **Claims Two and Three**

After Plaintiff was removed as Dayton View Branch Manager, Glancy required him to drive to local stations to perform "duties that were customarily assigned to Station[] Supervisors rather than Station Managers." Doc. #21, PAGEID #560 (citing Doc. #21-1, PAGEID #614-15). While he was driving to different stations, Plaintiff was not provided use of a government vehicle; nor was he reimbursed for mileage or other

---

[1] Glancy's removal of Plaintiff as Dayton View Branch Manager was the basis of Claim One in his Complaint. As discussed below, the Court previously dismissed Claim One with prejudice as barred by the statute of limitations. Doc. #14.

2

expenses.  Doc. #21, PAGEID #561 (citing Doc. #21-1, PAGEID #616-17).  However, Plaintiff concedes that he never requested a vehicle or reimbursement, even after becoming aware, in January 2013, of the possibility of being reimbursed.  *Id.* (citing Doc. #21-1, PAGEID #617-18).  Plaintiff concedes he was not required to drive to those stations after July, 2012.  Doc. #21-1, PAGEID #615.

### B.    Claim Five

From early September 2012, until late November 2012, Plaintiff worked at the Miamisburg, Ohio, Post Office ("Miamisburg Branch"), during which time Glancy was in Plaintiff's direct chain of supervision.  Doc. #21-6, ¶ 2, PAGEID #673.  One of Plaintiff's job responsibilities at the Miamisburg Branch was to settle pending grievances that had been filed by branch employees, and to input the grievance settlements into the Grievance Arbitration Tracking System ("GATS").  On October 19, 2012, Strange requested access to GATS.  On October 23, 2012, GATS sent an automated response email to Strange, explaining that GATS coordinator Robert Young ("Young") had denied his request for access because "the date of training and name of instructor must be included in the Special [*sic*] instructions box."  Doc. #21, PAGEID #562 (citing Doc. #21-1, PAGEID #619-20, 633).  Young sent a follow-up email to Plaintiff that day, explaining the steps that Plaintiff would have to take before he could obtain GATS access.  Doc. #21-1, PAGEID #634.  Plaintiff testified that he never received either email; further, he testified that he requested and was denied GATS access in November, 2012.  *Id.*, PAGEID #618-19.  On January 23, 2013, Plaintiff again requested GATS access; this request was granted, and he obtained access on January 31, 2013.  Doc. #21-8, ¶ 13, PAGEID #692, 698, 702.

3

### C. Glancy's Removal from Chain of Supervision and Claim Four

In December 2012, Glancy became the "acting district marketing manager for the [USPS] Ohio Valley District." Doc. #21-3, PAGEID #654. Plaintiff concedes that, starting in December 2012, Glancy was no longer in Plaintiff's direct chain of supervision. Doc. #17, PAGEID #287. In February 2013, Plaintiff was reinstated as manager of the Dayton View Branch; he worked at that branch and in that capacity until his retirement. Doc. #21-1, PAGEID #590. On March 2, 2013, Cheryl Kellner ("Kellner"), Manager of Post Office Operations for the region, and Plaintiff's supervisor during part of his time at the Miamisburg Branch, issued a Letter of Warning to Plaintiff in Lieu of 14-Day Suspension ("Letter of Warning"), for allegedly failing to timely enter grievance settlements into GATS while working at the Miamisburg Branch. Doc. #21-1, PAGEID #630. The Letter of Warning indicated that Plaintiff "could appeal his discipline to Glancy, who was now working as an EAS-25 Post Office Operations Manager ('POOM')," or he could request an "ELM 650 mediation," USPS's internal dispute resolution process. Doc. #21, PAGEID #563-64 (citing Doc. #21-1, PAGEID #631-32).

### D. Mediation and Administrative History

On or about March 4, 2013, Plaintiff spoke to Reginald Crutcher ("Crutcher"), the Equal Employment Opportunity ("EEO") Counselor for the Cincinnati, Ohio, District, which includes the Dayton, Ohio, region, and informed Crutcher that, rather than appeal to Glancy, he wished to proceed with the ELM 650 mediation. Doc. #21-1, PAGEID #599-600. During that conversation, Plaintiff complained to Crutcher about the Letter of Warning and that "there [were] things that had [gone] down maybe six to seven months

4

before that that had just started happening, and they were just building between me and Mr. Glancy." *Id.*, PAGEID #600-01.  The mediation was held on April 18, 2013, but failed to resolve the dispute.  Doc. #17-1, ¶ 9, PAGEID #296.  On April 22, 2013, Plaintiff contacted the EEO office of the USPS via telephone, *id.*, ¶ 10, and filed his formal EEO complaint on July 28, 2013, Doc. #1-2, PAGEID #14, "alleg[ing] discriminatory harassment based on Race," when he was:

1) "[R]emoved from his office; . . .
2) [R]equired to drive to stations throughout the Dayton, OH area; . . .
3) [D]enied access to a government vehicle and was required to drive his own vehicle at his own expense; . . .
4) [I]ssued a Letter of Warning in Lieu of 14-Day Suspension dated February 19, 2013, for Failure to Follow Instructions; and . . .
5) [D]enied the right to access the GATS System."

*Id.*  On July 10, 2015, the EEOC issued its Final Agency Decision, concluding that "the evidence does not support a finding that the complainant was subjected to discrimination as alleged," *id.*, PAGEID #30, and informing Plaintiff of his right to sue. *Id.*, PAGEID #31.

Plaintiff filed the instant lawsuit on October 13, 2015.  Doc. #1.  The five instances of alleged discrimination described in his EEO complaint formed the basis of his claims of race discrimination and hostile work environment.  On June 29, 2016, Defendant filed a Motion to Dismiss, arguing that all five claims were barred by the statute of limitations.  Doc. #8.  Both Defendant and Plaintiff attached exhibits to their memoranda.  Doc. #8-1, 8-2, 9-1.  On September 12, 2016, the Court dismissed Claim One (improper removal as Dayton View Branch Manager) with prejudice and converted the remainder of Defendant's motion to one for summary judgment.  Doc. #14, PAGEID #125 (citing Fed. R. Civ. P. 12(d)).  The Court granted the parties the opportunity "to conduct discovery on the issue of whether Plaintiff timely sought EEO counseling.

5

Upon completion of discovery, . . . the parties may submit, pursuant to Rule 56, cross-motions for summary judgment." *Id*. On January 6 and 12, 2017, Plaintiff and Defendant, respectively, moved for summary judgment. Doc. #17, 21.

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rule 56 requires the nonmoving

party to go beyond the pleadings and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

"Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure Civil 3d*, 2726 (1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). However, if it so chooses, the court may consider other properly presented materials in the record. Fed. R. Civ. P. 56(c)(3).

**B.    Title VII Claim by USPS Employee**

Before a plaintiff may bring a Title VII claim in this Court, he must satisfy administrative filing and exhaustion requirements within the time required by law. As an

7

employee of a federal government agency, Plaintiff must initiate the EEO complaint process within forty-five "days of the date of [each] matter alleged to be discriminatory[,]" *i.e.*, an unlawful employment practice. 29 C.F.R. § 1614.105(a)(1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109-10, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).[2] "[T]his time period for filing a charge is subject to equitable doctrines such as tolling or estoppel." *Morgan*, 536 U.S. at 113.

"42 U.S.C. § 2000e-2 explains in great detail the sorts of actions that qualify as 'unlawful employment practices' and includes among such practices numerous discrete acts." *Morgan*, 536 U.S. at 111. The discrete unlawful acts prohibited by Title VII include, but are not limited to, "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race. . . ." 42 U.S.C. § 2000e-2(a)(1). The Supreme Court has "repeatedly interpreted the term 'practice' to apply to a discrete act or single 'occurrence,' even when it has a connection to other acts." *Id*. at 111. Thus, complaints regarding "discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period," *id*. at 112, and "discrete discriminatory acts are not actionable if time barred, even when they are related to acts in timely filed charges." *Id*. at 113.

However, the Court in *Morgan* noted that "hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." *Morgan*, 536 U.S. at 115. Specifically, "when the workplace is permeated with

---

[2] The plaintiff in *Morgan* was subject to a 300-day limit for bringing a charge of discrimination under Title VII of the Civil Rights Act of 1964 by an individual who is not a federal government employee. 536 U.S. at 109 (quoting 42 U.S.C. § 2000e-5(e)(1)). However, the above language in *Morgan* is binding with respect to the forty-five day limit for federal government employees.

8

discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment, Title VII is violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal quotation marks and citation omitted). Among the factors to be considered "when determining whether conduct is severe or pervasive enough to constitute a hostile work environment 'include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000) (quoting *Harris*, 510 U.S. at 23). As "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute 'one unlawful employment practice,'" *Morgan*, 536 U.S. at 117 (quoting 42 U.S.C. § 2000e-5(e)(1)), a federal government employee would need to seek EEO counseling within forty-five days of "any act that is part of the hostile work environment." *Id.* (emphasis added).

## III.   ANALYSIS

### A.   Hostile Work Environment

In both his motion for summary judgment and his memorandum in opposition to Defendant's motion, Plaintiff argues that Claims Two, Three and Five were not discrete discriminatory acts undertaken by Defendant, but a pattern of racial discrimination by Glancy against Plaintiff, culminating with the issuance of the Letter of Warning (Claim Four). Doc. #17, PAGEID #292; Doc. #24, PAGEID #748. "Until the [L]etter of [W]arning, the individual acts committed by Glancy were not sufficiently severe to warrant a complaint. However, taken together, those acts show a pattern of conduct that

led to the discipline Plaintiff received." *Id.*; *see also* Doc. #24, PAGEID #748 (conceding that Claims Two, Three and Five "did not warrant an individual complaint.").

Plaintiff does not argue, much less proffer evidence, that anyone besides Glancy was responsible for the hostile work environment that he allegedly suffered; his failure to do so is fatal to his hostile work environment claim. As discussed above, such a claim requires a claimant to seek EEO counseling within forty-five days of the most recent discriminatory act that gave rise to the claim. *Morgan*, 536 U.S. at 117. Thus, the most recent discriminatory act must have occurred on or after January 18, 2013, in order for Plaintiff's conversation with Crutcher on or about March 4, 2013, to qualify as the timely initiation of the EEO process (assuming *arguendo* that the conversation was sufficient to initiate the process). Yet, it is undisputed that as of December, 2012, Glancy was no longer in Plaintiff's direct line of supervision, and that the acts that comprised Claims Two, Three and Five all occurred prior to January 1, 2013. Doc. #21-1, PAGEID #615-19; Doc. #21-3, PAGEID #654. Unless there was another act of ridicule, insult or discrimination perpetrated by Glancy on or after January 18, 2013, Claims Two, Three and Five may not form the basis of a hostile work environment claim.

With respect to Claim Four, the Letter of Warning was issued by Kellner, not Glancy, Doc. #21-1, PAGEID #632, and Plaintiff has offered no evidence that Glancy was involved with its issuance. Rather, the Letter of Warning states that Plaintiff had the right to appeal the discipline directly to Glancy, who at that time was serving as the Senior Manager of Post Office Operations for the region. *Id*. Further, while Glancy averred during the EEO investigation that he concurred with the issuance of the discipline, Doc. #27-3, ¶ 82, PAGEID #825, he and Kellner both testified that Kellner did

10

not send to him a copy of the Letter of Warning prior to issuance. Doc. #23-2, PAGEID #741-42; Doc. 30-4, PAGEID #1090-91. As the Letter of Warning was a one-time occurrence and was issued by Kellner, whom Plaintiff does not claim contributed to a racially hostile work environment, Claim Four, as a matter of law, constitutes a discrete discriminatory act. Thus, it may not form the basis of a hostile work environment claim. *Taylor*, 452 F. App'x at 620.

As Plaintiff only alleges racial harassment by Glancy, and the undisputed facts show that Glancy undertook no adverse or harassing action against Plaintiff within forty-five days of Plaintiff's conversation with Crutcher, Claims Two through Five may not form the basis of a hostile work environment claim. Defendant's motion is sustained, and Plaintiff's motion is overruled, as to Plaintiffs' claims of a hostile work environment.

### B. Discrete Acts

#### 1. Claims Two, Three and Five

As discussed above, it is undisputed that the actions giving rise to Claims Two, Three and Five occurred more than forty-five days prior to Plaintiff's March 4, 2013, conversation with Crutcher. Doc. #17-1, ¶ 5, PAGEID #296. Thus, Claims Two, Three and Five are time-barred under a discrete acts theory, 29 C.F.R. § 1614.105(a)(1); Defendant's motion is sustained, and Plaintiff's motion is overruled, as to Claims Two, Three and Five as discrete acts.

#### 2. Claim Four

Plaintiff claims spoke with Crutcher on March 4, 2013, just two days after the issuance of the Letter of Warning. However, he did not contact the USPS EEO office

until April 22, 2013, fifty-one days after the discipline, and outside of the time period in which he could initiate the EEO process. 29 C.F.R. § 1614.105(a)(1). Therefore, unless his conversation with Crutcher qualifies as initiating the EEO process, Plaintiff's Claim Four is time-barred as a discrete act.

Defendant claims that Plaintiff did not call Crutcher to begin the EEO process, but rather solely to schedule the ELM 650 mediation. Doc. #21, PAEGID #564. In support, Defendants cites Plaintiff's testimony, in which he stated that his "first priority was to get rid of the discipline that I had live on me, and I knew I was within my 45 days." Doc. #21-1, PAGEID #610. Further, Plaintiff testified that "I knew I could file an EEO at any time," id., PAGEID #611, yet he did not begin the EEO complaint process until after the mediation. Id., PAGEID #609. Defendant argues that Plaintiff, in his conversation with Crutcher, failed to evince a clear intent to begin the EEO counseling process; Defendant claims Plaintiff's failure to do so means that Claim Four is time-barred. Doc. #23, PAGEID #724-25 (citing *Lord v. Holder*, No. 13-1776, 568 F. App'x 435, 437-38 (6th Cir. 2014); *Johnson v. Cohen*, No. 00-3904, 6 F. App'x 308, 311 (6th Cir. 2001)).

However, there are several issues that preclude summary judgment on Claim Four at this juncture. First, Plaintiff testified that, during his conversation with Crutcher, he believed that he was not only scheduling the ELM 650 mediation, but also initiating an EEO claim. Doc. #21-1, PAGEID #608. Second, in his conversation with Crutcher, Plaintiff discussed not only issuance of the Letter of Warning, but also the race-based harassment and discrimination that Plaintiff believed he had suffered beginning in mid-2012. *See, e.g.*, *id.*, PAGEID #603-04. Third, Crutcher was responsible for handling

both the initial EEO counseling and ELM 650 mediation, and testified that he was "concern[ed] about there being confusion" among employees regarding which type of recourse (EEO counseling or ELM 650 mediation) they would be pursuing by contacting him. Doc. #19, PAGEID #356. Defendant emphasizes that, as a longtime manager with USPS, Plaintiff had received EEO training and had referred employees to the EEO poster displayed at the USPS branches, which detailed how to initiate the process. Doc. #21-1, PAGEID #628-29, 639. Yet, while it may seem dubious to Defendant that Plaintiff was unaware that initiating the EEO process was distinct from scheduling a mediation process, there is enough of a factual dispute that the evaluation of Plaintiff's credibility regarding his meeting with Crutcher must be reserved for the trier of fact.[3] Thus, the Court cannot conclude, as a matter of law, whether or not Claim Four is time-barred as a discrete discriminatory act, and Defendant and Plaintiff's motions for summary judgment must both be overruled with respect to that claim.[4]

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment, Doc. #21, is SUSTAINED IN PART AND OVERRULED IN PART, and Plaintiff's Motion for Summary Judgment, Doc. #17, is OVERRULED. Claims Two, Three and Five are DISMISSED WITH PREJUDICE, and judgment shall ultimately enter in favor of

---

[3] Moreover, the applicable regulations provide that "[w]here the aggrieved person chooses to participate in an alternative dispute resolution procedure in accordance with paragraph (b)(2) of this section, the pre-complaint processing period shall be [ninety] days." 29 C.F.R. § 1614.105(f). Thus, if the ELM 650 mediation constituted an acceptable alternative dispute resolution procedure under 29 C.F.R. § 1614.105(b)(2), then Plaintiff's post-mediation contacting of the EEO office on April 22, 2013, would have been timely.

[4] This ruling does not preclude either party from filing a dispositive motion as to the merits of Claim Four.

Defendant and against Plaintiff on those claims. Claim Four shall proceed solely as a discrete discriminatory act.

Date: July 19, 2017

*(signature)*

WALTER H. RICE
UNITED STATES DISTRICT JUDGE